# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8795 | **DATE** | 6/29/2004 |
| **CASE TITLE** | Gimbel vs. Wintroub et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 7/8/2004 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Defendants' motion (Doc 18-1) for summary judgment is denied. Ruling set for July 8, 2004 is stricken as moot. Counsel to appear for status on July 8, 2004 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 30 2004 | |
| | Notified counsel by telephone. | | date docketed | 75 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 2004 JUN 29 AM 11:04 | | |
| SCT | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ADAM H. GIMBEL, )
)
Plaintiff, )
)
vs. ) 02 C 8795
)
CARY J. WINTROUB; MARK S. KOMESSAR; )
and KOMESSAR & WINTROUB, a partnership, )
)
Defendants. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on Defendants Cary Wintroub's ("Wintroub"), Mark Komessar's ("Komessar"), and Komessar & Wintroub's ("K&W") motion for summary judgment. For the reasons set forth below, the motion is denied.

## BACKGROUND

Plaintiff Adam Gimbel ("Gimbel") is a lawyer who now resides and practices in Cleveland, Ohio. For the five years prior to moving to Cleveland, from 1996 to 2001, Gimbel worked as an associate at K&W, an Illinois law firm whose name partners are Komessar and Wintroub. Gimbel's compensation at K&W consisted of a combination of fixed salary and a one-third share of fees paid to K&W on cases that

Gimbel brought to the firm. Gimbel's cousin, Beth Inbinder ("Inbinder"), was an attorney at the firm of Baum, Ruffolo, & Marzel ("BRM"). Gimbel and Inbinder arranged a meeting between themselves, Komessar and BRM partner Sam Ruffolo ("Ruffolo"). This meeting resulted in a referral arrangement between the two firms where BRM would refer personal injury and medical malpractice cases to K&W and K&W would refer workers' compensation cases to BRM. BRM and K&W would then remit fifty percent (with a lower percentage for medical malpractice cases) of their fees generated through the referrals to the referring firm. Cases referred to K&W by BRM were treated by K&W as originating with Gimbel, who would then receive a share of the fees earned on BRM-referred cases. Between 1996 and 2001, BRM referred about thirty-five cases to K&W.

At the heart of the present dispute is an alleged separation agreement between Gimbel and K&W (the "Separation Agreement"). While Defendants deny that such an agreement existed,[1] the record indicates that prior to Gimbel's departure to Cleveland, K&W agreed to pay Gimbel one-third of whatever fees that would be

---

[1] Defendants dispute many of the statements contained in Gimbel's Local Rule 56.1 Statement of Additional Facts. However, because Defendants fail to properly controvert Gimbel's statements with any supporting references, many of Gimbel's factual assertions are deemed admitted (for the purposes of this summary judgment motion) by operation of Local Rule 56.1(b)(3)(B). See Bordelon v. Chicago School Reform Bd. of Trustees, 233 F.3d 524, 528-29 (7th Cir. 2000) (discussing Local Rule 56.1's predecessor–Local Rule 12(N)).

earned through K&W's outstanding cases that had been referred from BRM while Gimbel was at K&W. In exchange, Gimbel agreed to assist K&W in maintaining K&W's relationship with both the BRM-originated clients and BRM itself. The Separation Agreement did not contemplate Gimbel receiving money for clients referred by BRM after Gimbel left K&W.

Pursuant to the Separation Agreement, Gimbel contacted various K&W clients for whom he was primary counsel to inform them of his departure and to reassure them that K&W would competently represent them in his absence and that they should remain K&W clients. On a few occasions after he had left K&W, Gimbel spoke to K&W clients and advised them to stay with the firm. Gimbel also contacted Inbinder and Ruffolo and told them that BRM should continue its referral relationship with K&W after Gimbel left for Cleveland. For its part, K&W made certain payments to Gimbel after he left the firm for fees received on BRM-referred cases, even though Gimbel claims these payments were less than the one-third percentage owed to him. According to Gimbel, K&W has yet to pay him over $141,000 in fees due under the Separation Agreement.

On December 5, 2002, Gimbel filed suit in this court against Defendants, with jurisdiction based on diversity of citizenship. Gimbel's complaint alleges breach of contract and seeks an accounting for K&W's non-payment of fees owed under the

Separation Agreement (Count I) and also requests a declaratory judgement holding that K&W is bound to compensate Gimbel under the Separation Agreement's terms (Count II). Defendants now move for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the nonmoving party's case." Id. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986). The court must consider the record as a whole in a light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. Id. at 255; Bay v. Cassens Transport Corp., 212 F.3d 969, 972 (7th Cir. 2000). With these considerations in mind, we now turn to the present motion.

## DISCUSSION

Defendants first argue that summary judgment is warranted because the Separation Agreement is unenforceable under Rule 1.5 of the Illinois Rules of Professional Conduct ("Rule 1.5"). While Rule 1.5(f) outlines various conditions that govern fee-sharing arrangements between lawyers in different firms, Rule 1.5(j) provides that "[n]otwithstanding Rule 1.5(f), a payment may be made to a lawyer formerly in the firm, pursuant to a separation or retirement agreement." Rule 1.5(j); Romanek v. Connelly, 753 N.E.2d 1062, 1067-68 (Ill. App. Ct. 2001). However, certain restrictions on Rule 1.5(j) exist, the first being that the fee sharing agreement must not violate public policy. Romanek at 1071. Furthermore, the separation agreement cannot be based solely "on a mere client referral." Id. This occurs when the referring lawyer is rewarded for doing nothing more than "simply being a link in the chain." Id. (citing Corti v. Fleisher, 417 N.E.2d 764, 775 (Ill. App. Ct. 1981)).

In Romanek,[2] the Illinois Appellate Court, First District, found that the paramount public policy concern governing referral agreements is that the firm retaining a client's case must have an incentive to provide the best representation to the referred client after the referring lawyer has left the firm. Romanek, 753 N.E.2d at 1071. For this reason, an agreement would be contrary to public policy if the referring lawyer is entitled to a remittance of all the fees generated by the legal work of the client-retaining lawyer or firm. Id. at 1070. The Romanek court held that when a law firm retains some percentage of any fee recovery, "it stands to gain from its services and, accordingly, possesses the incentive to use its best efforts" in handling the client's case. Id. at 1071. Because the Gimbel-K&W Separation Agreement allowed K&W to retain two-thirds of the fees it acquired from the BRM cases (which were treated as originating with Gimbel), K&W would be sufficiently motivated to zealously represent the clients in question. In fact, K&W earned handsome rewards for many of these cases. For this reason, we find that the Separation Agreement (as alleged by Gimbel) does not run afoul of the public policy concerns addressed in Romanek.

The other chief restriction on referral-based separation agreements is that "such arrangements cannot rest on the referral alone." Romanek, 753 N.E.2d at 1070. This

---

[2] This is the only case cited by either party concerning the issue of the Separation Agreement's compliance with the Illinois Rules of Professional Conduct.

requirement comes from Rule 1.5(g)(2), which mandates that "the referring lawyer agrees to assume the same legal responsibility for the performances of the services in question as would a partner of the receiving lawyer." While the referring lawyer must do more than act as "a link in the chain," what constitutes the requisite quantum of additional obligations under the agreement is construed liberally. For instance, the Romanek court approved of an agreement where the departing/referring lawyer did nothing more than agree not to take a client with her when she left the firm. Id. at 1071.

Based on the record before us, Gimbel's obligations under the Separation Agreement included assisting K&W in maintaining its relationship with the BRM-originated clients as well as preserving K&W's lucrative referral arrangement with BRM. Defendants argue that Gimbel had no real duties under the Separation Agreement because he did not have the power to take clients with him and because no clients had previously expressed interest in leaving K&W. However, Gimbel identifies numerous instances where he affirmatively acted in furtherance of the Separation Agreement. Gimbel claims to have spoken with each K&W client for whom he was the primary attorney to reassure them that K&W would continue to represent them well. After he left K&W, Gimbel spoke to at least two K&W clients who were questioning the quality of K&W's representation and assuaged their concerns by telling

them that K&W would do a good job and that they should remain with the firm. Gimbel also spoke to Ruffolo and told him that the BRM-K&W relationship (which was initiated based on Gimbel and BRM attorney Inbinder being first cousins) should continue. Gimbel specifically told Ruffolo that a particular BRM-originated client, Tim Nolan, should stay with K&W, even though Nolan was beginning to get "jumpy" over the quality of K&W's counsel. Ruffolo went on to reassure Nolan, who stayed with K&W.

Via these examples of Gimbel's obligations under the Separation Agreement, and his subsequent conduct in furtherance of its terms, Gimbel has propounded sufficient evidence such that a genuine issue of fact exists concerning whether Gimbel had duties under the agreement beyond simply referring clients to K&W. As such, we cannot hold that as a matter of law the Separation Agreement violated Rule 1.5.

Defendants also argue that the Separation Agreement is unenforceable because it lacked consideration due to Gimbel's end of the bargain consisting of nothing more than illusory promises. An illusory promise "is a statement that is in the form of a promise, but it imposes no obligation upon the maker of the statement because it lacks specific terms that would be essential to an undertaking and enforceability. It is therefore not consideration for a return promise." Preferred Eternal Systems, Inc. v. Central Home, Inc., 660 N.E.2d 174, 178 (Ill. App. Ct. 1995). Defendants claim that

-8-

because Gimbel did not plan on taking K&W clients with him after leaving the firm and that Gimbel's departure would not cause any clients to leave, he was not actually promising to do anything at all.

Because of the equitable nature of Gimbel's declaratory judgment claim, Mimica v. Area Interstate Trucking, Inc., 620 N.E.2d 1328, 1335 (Ill. App. Ct. 1993), we will only void the contract if the amount of consideration involved "is not only so grossly inadequate as to shock the conscience of the court, but also accompanied by circumstances of unfairness." Id. As for the Gimbel's breach of contract claim, a legal remedy, the requisite consideration could consist of as little as peppercorn, so long as it is perceptible. Wadsworth v. Thompson, for Use of Peet, 1846 WL 3870, *4 (Ill. 1846). Under his version of events, Gimbel's duties under the Separation Agreement included assuring clients to stay with K&W, and more importantly endeavoring to preserve the K&W-BRM relationship. The K&W-BRM referral arrangement, which has proven profitable to K&W, seemed to hinge on the familial relationship between Gimbel and Inbinder. Gimbel's efforts to sustain K&W's deal with BRM would have been of significant value to K&M–making K&W's alleged promise to compensate Gimbel reasonable. The Separation Agreement was therefore meant to benefit both sides and regardless of whether the legal or equitable standard is employed, Gimbel has

advanced enough facts, for the purposes of this motion, to counter Defendants' claim that the agreement was not supported by consideration.

Since genuine issues of material fact exist as to the Separation Agreement's validity and enforceability, summary judgment would be inappropriate.

## CONCLUSION

Based on the foregoing analysis, Defendants' motion for summary judgment is denied.

_Charles P. Kocoras_
Charles P. Kocoras
Chief Judge
United States District Court

Dated: JUN 2 9 2004